UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HUMANITARY MEDICAL CENTER
INC.,

    Plaintiff,

v.    Case No. 8:23-cv-1792-WFJ-TGW

JOSE ARTICA; LAZARO AVILA;
JUAN CRUZ; and QUALITY
CARE HEALTH SERVICES, INC.,

    Defendants.
_____/

**TEMPORARY RESTRAINING ORDER AND**
**ORDER FOR INSTANTER SERVICE**

This matter is before the Court on Plaintiff Humanitary Medical Center Inc.'s ("Plaintiff" or the "Company") Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") (Dkt. 3), filed pursuant to Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02. Due to the emergency nature of the relief requested by Plaintiff, the Court finds it appropriate to decide the Motion on the papers and without a hearing.

## Background

Based on Plaintiff's Verified Complaint, the sworn affidavits submitted, and evidence of record, the Court makes the following preliminary findings:

1. Defendant Jose Artica ("Artica"), as the Company's COO, managed the day-to-day operations of the Company until his termination and had unrestricted access to the Company's systems, facilities, and employees.

2. Artica participated in the development of the Company's policies, procedures, and business strategy.

3. Artica is aware that the Company is part of an established network. Further, Artica knows how the Company makes a profit.

4. Artica used his personal computer and personal cellular phone for his work for the Company. Artica also used personal USB drives while working for the Company.

5. At the outset of his employment with the Company, Artica executed an employment agreement. That agreement specified that Artica would maintain the confidentiality of the Company's confidential business and trade secret information, return all Company property upon termination, not compete with the Company for a period of twenty-four months post-employment within a ten-mile radius of a Company facility, not solicit the Company's patients, not solicit the Company's vendors, and not solicit for hire any of the Company's employees.

6. Artica also executed an acknowledgement of receipt of the Company's employee handbook, in which he agreed to comply with the Company's guidelines,

rules, policies and procedures (including those established in the employee handbook).

7. By agreeing to comply with the employee handbook, Artica indicated that he would maintain the confidentiality of the Company's confidential business and trade secret information, would not compete with the Company for a period of twenty-four months post-employment within a ten-mile radius of a Company facility, would not solicit the Company's patients for a period of twenty-four months post-employment, would not conduct business with any person or entity that referred business to the Company, and would not solicit for hire any of the Company's employees for twenty-four months.

8. On March 24, 2023, Artica executed a Separation Agreement and General Release with the Company. In the separation agreement, in exchange for four weeks of severance, Artica released all claims he may have had, known or unknown, against the Company.  In addition, Artica agreed to maintain the confidentiality of all of the Company's confidential business and trade secret information and to return all of the Company's confidential business and trade secret information in his possession.  The separation agreement superseded all prior agreements entered into between the Company and Artica, except those regarding "confidentiality, proprietary information, intellectual property, non-competition, non-solicitation, and/or trade secret obligations to the Company."

9. While employed by the Company, Artica misappropriated the Company's confidential business and trade secret information, including the Company's patient list, employee roster, pricing information, insurance information, and vendor information. He took this proprietary information in order to start a competing business, Defendant Quality Care Health Services, Inc. ("Quality Care").

10. The Company discovered Artica's misappropriation following his termination.

11. Artica founded Quality Care while still employed at the Company.

12. Acting as an agent of Quality Care, Artica is using the Company's confidential business and trade secret information to solicit the Company's patients, employees, vendors, and business referral sources. Artica uses information he knows about the Company to compete with the Company concerning its current patients and potential patients. Artica is soliciting the Company's patients to switch primary care physicians, which acts to take the patient out of the Company's network and move the patient to the network that encompasses Quality Care.

13. Artica, acting as an agent of Quality Care, has solicited the Company's employees to quit working for the Company and to work for Quality Care.

14. Defendant Juan Cruz ("Cruz") assisted and encouraged Artica in the above actions as relates to the founding of Quality Care. Cruz is actively using the Company's confidential business and trade secret information, that he knows was

misappropriated by Artica, to benefit Quality Care.  Cruz is actively working with Artica to get the Company's patients to change primary care physicians so that the patients exit the Company's network and enter Quality Care's network, which also includes Cruz's primary business, Sunshine Day Care.

15. Artica solicited Defendant Lazaro Avila ("Avila") to quit working for the Company to, instead, work for Quality Care.  Avila recently quit working for the Company to go work for Quality Care.

16. Avila was a business development and marketing employee for the Company.  Avila actively developed and worked on new patient opportunities for the Company.  Avila regularly worked with insurance companies and insurance agents that were part of the Company's network.

17. At the outset of his employment with the Company, Avila executed an acknowledgement of receipt of the Employee Handbook, in which he agreed to comply with the Company's policies and procedures in the employee handbook.

18. In agreeing to comply with the employee handbook via the Avila Acknowledgment, Avila agreed to maintain the confidentiality of the Company's confidential business and trade secret information, to not compete with the Company for a period of twenty-four months post-employment within a ten-mile radius of a Company facility, to not solicit the Company's patients for a period of twenty-four months post-employment, to not conduct business with any person or entity that

referred business to the Company, and to not solicit for hire any of the Company's employees for a period of twenty-four months.

19. Avila misappropriated the Company's confidential business and trade secret information and is using the Company's confidential business and trade secret information to benefit Quality Care.

20. Avila is soliciting persons and companies that previously referred business to the Company for business with Quality Care.

21. Avila and Artica, acting as an agent of Quality Care, are actively soliciting the Company's patients to change their primary care physician and move from the Company's network to Quality Care's network.

22. Avila and Artica, acting as an agent of Quality Care, are actively soliciting the Company's employees to quit working for the Company and begin working for Quality Care.

23. On June 26, 2023, to ensure that it had full control over its computer systems, databases and software, the Company engaged cybersecurity, ESI, and computer data preservation and recovery expert E-Hounds, Inc. ("E-Hounds").

24. E-Hounds secured the Company's computer systems, databases, and software and then investigated whether Artica and/or Avila misappropriated Humanitary's confidential and proprietary trade secret information.

25. E-Hounds discovered electronic artifacts establishing that Artica

transferred Humanity's confidential and proprietary trade secret information to himself personally on December 29, 2022, February 1, 2023, and February 7, 2023. Artica transferred Humanity's confidential and proprietary trade secret information by way of download, USB drives, and potentially via email or some other Google suite product.

26. E-Hounds discovered electronic artifacts establishing that Avila transferred Humanity's confidential and proprietary trade secret information to himself personally on May 9, 2023 via download. Artica and Avila were acting as agents of Quality Care.

**Analysis**

To secure a Temporary Restraining Order (TRO), the moving party must establish: (1) substantial likelihood of success on the merits; (2) irreparable injury without the requested relief; (3) that harm to the non-movant does not outweigh the threatened injury to the movant; and (4) that granting the TRO serves the public interest. The several federal causes of action in the complaint give the Court subject matter jurisdiction.

Plaintiff has demonstrated a substantial likelihood of success on the merits of its claim for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA") and of its tortious interference with business relations

claim.[1] Specifically, Plaintiff has demonstrated a likelihood that Defendants:

> (i) acted in violation of the FUTSA by using Plaintiff's confidential business and trade secret information without Plaintiff's consent;
>
> (ii) knew or should have known that the business and trade secret information was derived from improper means or acquired by a person owing a duty to Plaintiff to maintain the secrecy or limit the use of the information; and
>
> (iii) tortiously interfered with Plaintiff by soliciting Plaintiff's patients, employees, and business referral sources.

Plaintiff will suffer immediate, irreparable harm without the requested relief. *See Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1149 (11th Cir. 1991) (quotation omitted) (stating that "the loss of customers and goodwill is an irreparable injury"); *Everest Nat'l Ins. Co. v. Rockhill Ins. Co.*, No. 8:16-cv-2803-T-35JSS, 2016 WL 8914545, at *6 (M.D. Fla. Oct. 5, 2016) (citation omitted) (noting that "Florida law presumes irreparable harm where trade secrets are misappropriated for unauthorized use"). Further, this threatened injury to Plaintiff outweighs any harm Defendants might suffer if the TRO is granted. Finally, a TRO in this case serves

---

[1] Because the Plaintiff has shown it is entitled to a TRO on its FUTSA and tortious interference claims, the Court makes no findings as to the other claims. *See Freedom Med., Inc. v. Sewpersaud*, No. 6:20-cv-00771-RBD-GJK, 2020 WL 8370952, at *2, n.3 (M.D. Fla. May 6, 2020).

the public's interest in protecting trade secrets and preventing unfair competition.

WHEREFORE, for good cause shown, Plaintiff's Motion for Temporary Restraining Order (Dkt. 3) is **GRANTED**, and **IT IS HEREBY ORDERED** as follows:

(1) Defendants must immediately cease:

(a) Taking, accessing, using, disclosing, or continuing to possess Plaintiff's confidential information and/or trade secrets, including non-public information concerning Plaintiff's patients, business, patients, vendors, employees, and Plaintiff's unique and proprietary business know-how and requiring return of such information and documents;

(b) Making representations that Plaintiff and Defendants are affiliated, associated, or related, or making representations intended to cause any third party to believe Defendants are conducting business as Plaintiff, or disparaging Plaintiff;

(c) Contacting or soliciting Plaintiff's patients;

(d) Contacting or soliciting Plaintiff's employees, vendors, or business referral sources.

(2) Within one (1) day of this Order, Artica and Avila shall provide Plaintiff's counsel with an accounting of all electronic devices, email accounts, systems, and databases Artica and Avila used to conduct business as an agent of

Plaintiff and what electronic devices, email accounts, systems, and databases contain any of Plaintiff's confidential business and trade secret information. Artica and Avila shall not in any way alter the identified electronic devices, email accounts, systems, or databased. Within three (3) days of the Order, Artica and Avila shall deliver to Plaintiff's computer forensics expert, E-Hounds, all identified electronic devices and access to the identified email accounts, systems, and databases.

(3) Plaintiff shall immediately post a security bond with the Clerk of Court in the amount of $25,000. This injunction is in effect immediately, but will dissolve at 5:00 p.m. on August 14, 2023, if the bond is not posted by then.

(4) Plaintiff must personally serve the Defendants with process, including a copy of all pleadings in this case and this Order, and file proof of same. <u>This must be done instanter</u>. Plaintiff must use email, hand delivery, and regular process on an <u>immediate</u> basis.

This Temporary Restraining Order shall remain in effect for fourteen (14) days and expire on August 25, 2023, at 9:35 a.m., or until further order of this Court. The Court will conduct a hearing on preliminary injunctive relief on **August 17, 2023, at 9:30 a.m.** in Courtroom 15B, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602.

**DONE AND ORDERED** at Tampa, Florida, on August 11, 2023, at 9:35 a.m.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record