# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

HUMANITARY MEDICAL CENTER,
INC.,

      Plaintiff,

v.                                                           Case No. 8:23-cv-1792-WJF-TGW

JOSE ARTICA, LAZARO AVILA,
JUAN CRUZ, and QUALITY CARE
HEALTH SERVICES, INC.,

      Defendants.

_____/

## ORDER

Before the Court is Defendant Lazaro Avila's Motion to Dismiss (Dkt. 40),

Defendants Jose Artica, Juan Cruz, and Quality Care Health Services, Inc.'s

Motion to Dismiss (Dkt. 42) and Plaintiff Humanitary Medical Center, Inc.'s

Responses (Dkts. 58, 59).  After careful consideration of the allegations of the

Verified Complaint (Dkt. 1), the submissions of the parties, and the applicable law,

the Court grants the motion in part, with leave to replead.

## BACKGROUND

On August 11, 2023, a Temporary Restraining Order ("TRO") was entered.

Dkt. 10.  The Court issued the TRO on the claims for misappropriation of trade

secrets under the Florida Uniform Trade Secrets Act ("FUTSA") and tortious

interference of business relations.[1]  The TRO has been extended and remains in place.

The parties are described as follows.  Plaintiff Humanitary Medical Center, Inc. ("Humanitary") is a medical company specializing in treating Spanish-speaking patients.  Dkt. 1 ¶ 13.  Humanitary provides medical services such as "primary care, mobile, optometry, wellness, dental, psychology, physical therapy, x-ray, pharmaceutical, nursing, emergency, and laboratory." *Id.* ¶ 14.  Humanitary operates its business through an established network that is centered around primary care physician relationships with patients and referrals stemming from those relationships. *Id.* ¶ 15.

Defendant Jose Artica served as the Chief Operating Officer ("COO") of Humanitary until he was terminated for concurrently operating a competing business, Defendant Quality Care Health Services, Inc. ("Quality Care"). *Id.* ¶ 17.[2] Defendant Lazaro Avila was working for Humanitary as a business development and marketing employee at the time. *Id.* ¶¶ 4, 32.  Less than two months after Mr. Artica was terminated, Mr. Avila quit working for Humanitary and began working

---

[1] "Because the Plaintiff has shown it is entitled to a TRO on its FUTSA and tortious interference claims, the Court makes no findings as to the other claims." Dkt. 10 (TRO) at 8 n. 1.
[2] After his termination, Artica signed a Separation Agreement and General Release with Humanitary. *Id.* ¶ 26; Dkt. 1-7.

for Quality Care.  *Id*. ¶¶ 4, 30.  Defendant Juan Cruz is the co-owner and vice president of Quality Care.  *Id*. ¶ 3.

Mr. Avila requests the dismissal of the six counts naming him: Count I for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.; Count II under FUTSA; Count III under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*.; Count VI for breach of the duty of loyalty; Count VII for tortious interference with business relations; and Count IX for breach of contract.  The remaining Defendants argue for dismissal of Counts I, II, III, and VII together with Counts V and VIII.  Count V seeks relief pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.201 *et seq*. of the Florida Statutes, and Count VIII  unjust enrichment.

## PLEADING STANDARDS

In reviewing a complaint, the Court accepts all factual allegations, not legal conclusions, as true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (concerning reasonable inferences); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating legal conclusions "couched" as facts need not be accepted as true).[3]  To survive a

---

[3] *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (stating "legal conclusions masquerading as facts" will not prevent dismissal).

motion to dismiss filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., the complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is "plausible on its face" when the content of the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 566).  The determination of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. 556 U.S. at 679.

Generally, only matters within the four corners of the complaint may be considered in ruling on a motion filed under Rule 12(b)(6).  *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  Exceptions exist for documents central to the plaintiff's claims where their authenticity is unchallenged, information of public record, or facts susceptible to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  None of these limited circumstances apply here.

## DISCUSSION

In issuing the TRO, the Court determined that Count II under FUTSA and Count VII for tortious inference state claims for relief, and nothing presented in these filings support a contrary result.  In this motion to dismiss, Defendants rely

heavily on certain testimony taken at the hearings conducted after the issuance of the TRO.  The 12(b)(6) dismissal standards do not allow for resolution of material, factual disputes but, rather, on drawing all reasonable inferences from the allegations of the operative complaint in the light most favorable to Plaintiff.

## I.      Federal Claims (Counts I and III)

### Count I—DTSA: Misappropriation of trade secrets against Artica, Avila, and Quality Care

To plead misappropriation of trades secrets, the complaint must allege that (1) the defendant misappropriated (2) the plaintiff's trade secret.  *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1310, 1311 n.13 (11th Cir. 2020).  The terms misappropriation and trade secret are substantively similar under both DTSA and FUTSA.  18 U.S.C. §§ 1839(3), (5); Fla. Stat. §§ 688.002(2), (4).  A trade secret is information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3)(B).[4]  By definition, a trade secret also requires

---

[4] In Florida, a trade secret "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use."  Fla. Stat. § 688.002(4)(a).

that the owner take "reasonable measures to keep such information secret." *Id*. §

1839(3)(A).[5]

Misappropriation occurs when someone acquires another's trade secret and

knew or had reason to know that the secret was obtained through improper means.

*Id*. § 1839(5).  A person can also misappropriate by disclosing or using the trade

secret, without consent, while knowing or having reason to know that it was (1)

derived from someone who used improper means to acquire the trade secret, (2)

acquired in a manner giving rise to a duty of secrecy, or (3) derived from someone

who owed a duty to the person seeking to maintain its secrecy.  *Id*.; *RxStrategies,*

*Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019)

(citations omitted).

The Verified Complaint alleges that Mr. Artica, without permission, used

confidential business and trade secret information of Humanary to start a

competing business, Quality Care.  Dkt. 1 ¶¶ 20, 22, 25.  For the benefit of Quality

Care and Artica's own personal benefit, Artica used non-public information he

acquired as COO.  This information included Humanary's processes, network,

"contacts with insurance companies, insurance agents, HMOs, MSOs, and

---

[5] Florida law states that a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Fla. Stat. § 688.002(4)(b).

providers," marketing and business development strategies, and private agreements. *Id.* ¶¶ 45, 48.

Mr. Avila, as a team lead employee for marketing and community outreach, also had access to much of the same confidential business and trade secret information. *Id.* ¶¶ 4, 46, 48. Avila reported to Mr. Artica before Artica's separation from Humanity. *Id.* ¶¶ 4, 26. Artica and Avila allegedly misappropriated this information to unfairly compete with Humanity and cause it harm. *Id.* ¶¶ 49, 53. The acts of Artica and Avila are also attributed to Quality Care. *Id.* ¶ 50.

Defendants argue that the claims under DTSA, and FUTSA, fail as a matter of law because Humanity's patients, employees, and referral sources are not "trade secrets." They contend that this information is not confidential and can be easily compiled through sources outside Humanity. For example, the identities of entities that may refer Humanity patients "could be found and a list compiled through a simple online search." Dkts. 40 at 9, 42 at 13. Defendants argue that the names of Humanity patients are not trade secrets because this information is "known to the network" of medical providers, insurers, health maintenance organizations, and management services organizations. *Id.*

Based on accessibility through other sources, Defendants conclude that the identities of employees, referral sources, and patients are not proprietary, given

Plaintiff's obvious failure to protect this information.  These assumptions overlook several allegations.

First, patient and employee lists are generally deemed trade secrets unless the facts indicate that such information is easily assessable from outside sources. *See*, *e.g.*, *Quality Labor Mgmt., LLC v. Galvan*, No. 6:21-cv-588-PGB-DAB, 2021 WL 4935745, at *2 (M.D. Fla. July 12, 2021) (finding client and employee lists as well as business strategies were trade secrets).  Second, Plaintiff had a system in place to maintain secrecy through "password protection, VPNs, written agreements, data encryption, access restriction" and "confidentiality obligations." Dkt. 1 ¶ 47.  Restricting access to information through authorized users via passwords may be considered as an acceptable measure to establish trade secret protection.  *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1298–99 (11th Cir. 2018) (citing *SMS Audio, LLC v. Belson*, No. 9:16-cv-81308, 2016 WL 8739764, at *3 (S.D. Fla. Aug. 16, 2016)).[6]  Finally, Mr. Artica and Mr. Avila were aware that the information was confidential by signing certain documents imposing a duty of confidentiality.  Dkt. 1 ¶¶ 22–25, 33, 34; Dkt. 1-6; Dkt. 1-8; *see Whertec, Inc. v. Salmon*, No. 3:20-cv-1254-BJD-PDB, 2021 WL 3555676, at *4 (M.D. Fla. Apr. 28, 2021) (signing confidentiality agreements,

---

[6] *See also Datto, Inc. v. Moore*, No. 8:20-cv-2446-T-33TGW, 2020 WL 7318957, at *8 (M.D. Fla. Dec. 11, 2020); *PrismHR, Inc. v. Worklio, LLC*, No. 18-122841-Civ, 2019 WL 13189471, at *8 (S.D. Fla. Feb. 8, 2019).

maintaining employee handbooks with policies of protecting proprietary information, and placing password restrictions on company computers imply reasonable efforts).

Defendants' arguments require resolution of factual disputes—whether identities and information are available to the public and whether appropriate and proportionate policies or practices are in place to maintain its secrecy. Typically, the determination of what constitutes a trade secret, a fact-intensive inquiry, is best left for the factfinder after development of the record on summary judgment or at trial. *See Yellowfin Yachts, Inc.*, 898 F.3d at 1298–99 (affirming summary judgment on district court's finding that no reasonable juror could find information qualified as trade secret, but acknowledging such determination is usually made after full presentation of evidence from each side).[7] Under the federal pleading standards, a plaintiff "need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (citing *Twombly*, 550 U.S. at 555–56) (unpublished opinion).

---

[7] *See also Datto, Inc.*, 2020 WL 7318957, at *9 (denying motion to dismiss DTSA and FUTSA claims because allegations raised reasonable inference that defendant "actually used" the confidential information).

Taking together all the allegations of fact, Humanitary states a plausible claim for misappropriation of trade secrets including employee and patient identities and referral sources, which Plaintiff reasonably attempted to protect with password protection and confidentiality policies and agreements.  Nonetheless, one last housekeeping matter warrants attention.

The Court recognizes that the Verified Complaint suffers from a somewhat common pleading error.  A pleading that wholly incorporates all preceding paragraphs into each and every count is referred to as a "shotgun pleading" and must be avoided.  *See Weiland v. Palm Bch. Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 n.11 (11th Cir. 2015).  Most of Defendants' arguments focus on the lack of clarity of what actions fall under which counts.  To rectify any confusion moving forward, Plaintiff will be given the opportunity to replead, paying careful attention to which preceding paragraphs are incorporated into each count to clearly separate the claims for relief.  Plaintiff should also reevaluate whether the entire "factual allegations" section should be wholly incorporated into each count.  Finally, this instruction applies to all the counts.

### *Count III—CFAA: Improper access from protected computer against Artica and Avila*

The CFAA creates a private right of action against someone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."  18

10

U.S.C. §§ 1030(a)(2)(C), (g).[8] A "protected computer" is a computer that is used in or affects interstate commerce or communication. *Id*. § 1030(e)(2). Anyone who improperly accesses a protected computer without authorization or in excess of authorization and causes damage is subject to suit for compensatory damages and injunctive relief. *Id*. §§ 1030(a)(5), (g).

To plead a claim under CFAA, the plaintiff must allege the defendant "(1) intentionally accessed a computer, (2) lacked authorization or exceeded his authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000.00" to the plaintiff. *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1319 (S.D. Fla. 2018) (quoting *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010)). Count III satisfies all four factors.

Plaintiff alleges that Mr. Artica and Mr. Avila transferred and downloaded confidential business and trade secret information without authorization or by exceeding authorization previously given. Specifically, prior to their separations from Humanitary, both Artica (before March 2023) and Avila (before May 2023) "gained access to, transferred, and downloaded the Company's confidential business and trade secret information" to themselves. Dkt. 1 ¶¶ 65, 67. Their

---

[8] *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1340 (N.D. Ga. 2017) (citing § 1030(a)(4) of CFAA); *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1290 (M.D. Fla. 2012) (stating CFAA creates private right of action).

"unauthorized access" to the "Company's protected computers, systems, software, hard drives, business network, database, and patient information" caused damage to Plaintiff in excess of $5,000.00.  *Id*. ¶¶ 70, 71.

Both Avila and Artica argue that these allegations are insufficient to show each acted without authorization or exceeded the authorized use.  Dkts. 40 at 10, 42 at 15.  They each contend Plaintiff concedes they were employed at the time of the alleged breaches.  The Court finds any such concession does not compromise the CFAA claim.

Although Artica and Avila may have been employed by Humanity, Count III supplies additional facts.  Artica is alleged to have been operating a competitor—Quality Care—while still serving as Humanity's COO.  Dkt. 1 ¶ 65. Marketing lead Avila is alleged to have been working for the benefit of Quality Care while still employed by Humanity.  *Id*. ¶ 67.  These allegations show that both these Defendants plausibly exceeded authorized use by accessing confidential information for the improper purpose of using it at their next employment to gain unfair advantage in the Spanish-speaking patient market.  *See Datto, Inc. v. Moore*, No. 8:20-cv-2446-T-33TGW, 2020 WL 7318957, at *9–10 (M.D. Fla. Dec. 11, 2020) (finding CFAA claim viable where plaintiff alleged former employee improperly used trade secret after starting job with competitor).  Accordingly,

Count III may proceed, subject to clarifying which preceding paragraphs of the
future, amended verified complaint should be incorporated in each count.

## II.   State Law Claims (Counts V, VI, VIII, and IX)

Defendants argue that the state law causes of action for violations of
FDUTPA, breach of loyalty, unjust enrichment, and breach of contract are
preempted by FUTSA.  Specifically, FUTSA "displace[s] conflicting tort,
restitutory, and other law of this state providing civil remedies for
misappropriation of a trade secret."  Fla. Stat. § 688.008(1).  However, this
provision carves out certain exceptions:

> (2) This act does not affect:
>
> > (a) Contractual remedies, whether or not based upon
> > misappropriation of a trade secret;
> >
> > (b) Other civil remedies that are not based upon misappropriation
> > of a trade secret; or
> >
> > (c) Criminal remedies, whether or not based upon misappropriation
> > of a trade secret.

*Id*. § 688.008(2).

An exception to preemption of separate tort claims turns on whether the
"allegations of trade secret misappropriation alone comprise the underlying
wrong."  *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1294–95
(S.D. Fla. 2018) (citation omitted).  If a plaintiff alleges additional facts "not based
upon misappropriation of a trade secret," then other tort claims are not barred.  *See,*

*e.g., TriNet USA, Inc. v. Vensure Employer Servs., Inc.*, No. 8:20-cv-2018-VMC-AAS, 2021 WL 2661108, at *5–6 (M.D. Fla. June 29, 2021) (denying motion to dismiss because factual differences existed between the FDUTPA, tortious interference, and unfair competition claims and any FUTSA claim) (collecting cases). Separate torts are barred only if "there is no 'material distinction' between the plaintiff's FUTSA claim" and the other torts. *Sentry Data*, 361 F. Supp. 3d at 1294–95 (citations omitted).

The Court will address the four state law counts.

### *Count V—FDUTPA: Unfair competition against Artica, Cruz, and Quality Care*

The Court finds that the FDUTPA count is predicated on material facts distinct from the FUTSA claim. *See Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (finding FDUTPA claim survives motion to dismiss where it contains "material distinctions" from FUTSA claim). First, in addition to the facts relied upon for the misappropriation of trade secrets, the FDUTPA count alleges that Artica operated Quality Care in direct competition with Humanary for several months while employed by Humanary, and that all Defendants are engaging in unfair competition. Dkt. 1 ¶¶ 84, 89. Second, Defendants are actively soliciting Humanary's employees, referral sources, and patients. *Id.* ¶¶ 85 ("exploiting relationships"), 86 ("Quality Care is actively soliciting"), 87 (Artica "is soliciting

14

the Company's patients").  Alleging unfair methods of competition by exploiting relationships and inducing employees to violate confidentiality policies hinges on facts apart from a misappropriation of trade secret claim.  *See Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, No. 8:17-cv-190-T-23MAP, 2018 WL 3391379, at *7 (M.D. Fla. June 12, 2018), *adopted as modified by* 2018 WL 4771060 (M.D. Fla. Oct. 3, 2018) (denying FUTSA preemption at the summary judgment stage where plaintiff alleged solicitation of customers and inducing individuals to breach confidentiality obligations).  Because the FDUTPA count is materially distinct from the FUTSA claim, this claim may proceed subject to amendment and clarification of the incorporated paragraphs as discussed above.

### *Count VI—Breach of loyalty against Artica and Avila*

Where the plaintiff pleads facts supporting a breach of the duty of loyalty and those facts are not solely based on the underlying allegations of misappropriation of trade secrets, there is no FUTSA preemption.  *See Imagine Commc'ns Corp. v. Villegas*, No. 17-cv-20401-Gayles/Otazo-Reyes, 2017 WL 2304013, at *3–4 (S.D. May 19, 2017) (citations omitted); *Whertec, Inc.,* 2021 WL 3555676, at *5 (denying motion to dismiss breach of loyalty claim where defendant used confidential information about past employer's clients and projects as an advantage in competing with past employer).  Just as in *Villegas*, Plaintiff

here alleges that Defendants Artica and Avila conspired to recruit and solicit other employees of Plaintiff to join the competitor.

Plaintiff alleges that Artica and Avila used information to solicit Humanitary's patients to switch primary care physicians, which effectively moved its patients to the network that encompasses Quality Care.  Dkt. 1 ¶¶ 94, 97, 98. Artica and Avila solicited employees to quit working for Humanitary and begin working for Quality Care.  *Id*. ¶¶ 96, 98.  The Court finds that these allegations of breach of loyalty are materially distinguishable from the FUTSA claim and are therefore not preempted.  Nonetheless, Plaintiff must replead for clarification of paragraph incorporation.

### ***Count VIII—Unjust enrichment against Artica, Cruz, and Quality Care***

Defendants' sole argument as to unjust enrichment is the whole incorporation of prior paragraphs into Count VIII.  Plaintiff provides at least some authority that additional factual allegations in an unjust enrichment claim fall within an exception to FUTSA preemption.  *See Vietch v. Virgin Mgmt. USA, Inc.*, No. 15-cv-20989-KMM, 2015 WL 13808110, at *7 (S.D. Fla. Sept. 18, 2015) (denying motion to dismiss based on FUTSA preemption of unjust enrichment count because facts pleaded "extend beyond merely misappropriation of trade secrets to contributions of labor, money, relationships, time, and expertise").  Relying on *Vietch*, Plaintiff argues that these Defendants received the benefits of

Humanitary's labor, money, relationships, and expertise even after he began operating Quality Care.  Dkt. 59 at 11.

Specifically, Plaintiff alleges that Artica, Cruz, and Quality Care were and are benefitted by actively working on Humanitary's patients to change primary care physicians "so that the patients exit the Company's network and enter Quality Care's network, which also includes Sunshine Day Care and Essential Clinic." Dkt. 1 ¶ 115.  The Court finds this count sufficient to withstand FUTSA preemption subject to being repleaded consistent with this Order.

### *Count IX—Breach of contract against Avila*

Avila's challenges to the contract count are not convincing.  Arguments directed toward the existence of a contract and the authenticity of a signature and other factual matters require factual development.  Count IX may therefore proceed after it is amended regarding preceding paragraphs.

Having determined that each state law count contains pertinent factual allegations in addition to those of misappropriation of trade secrets, the Court finds no FUTSA preemption.  In repleading, Plaintiff must focus on paragraphs 44, 55, 62, 73, 83, 92, 102, 113, 119 and 128 of the Verified Complaint (Dkt. 1).  Plaintiff is cautioned against wholly incorporating all preceding paragraphs or an entire section, such as "factual allegations," into any given count.

Accordingly, the Motions to Dismiss (Dkts. 40, 42) are denied in part and granted in part.  Plaintiff must file an amend verified complaint to clarify precisely which, if any, paragraphs should be incorporated into each count.  The amended pleading consistent with this Order must be filed within ten (10) days.  Defendants must file their answers and defenses within fourteen (14) days of its filing.

**DONE AND ORDERED** at Tampa, Florida, on December 19, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record